43572.   BENNETT v. ASSOCIATED FOOD STORES, INC.

Argued April 1, 1968—Decided November 25, 1968.

From that order plaintiff appeals.

*Virgil H. Shepard, Robert F. Higgins,* for appellant.

*Sell & Comer, Ed S. Sell, III, John D. Comer,* for appellee.

EBERHARDT, Judge. ■ Plaintiff-appellant urges that the court is without power to direct a verdict after dispersal of the jury, and that without a verdict signed by one of the jury there can be no directed verdict. Whether, prior to the adoption of the Civil Practice Act, there could have been the direction of a verdict after dispersal of the jury does not appear to have been decided. However, there was no statute requiring that the verdict be signed, even when returned by the jury without direction. *Southern Express Co. v. Maddox,* 3 Ga. App. 223 (59 SE 821); *Sullivan v. State,* 29 Ga. App. 377 (115 SE 290). This case was tried after the effective date of the Civil Practice Act, *Code Ann.* § 81A-150 (a) providing "The order of the court granting a motion for a directed verdict is effective without any assent of the jury." Under this provision it seems plain enough that no signed verdict is required.

The same language is to be found in Rule 50 (a) of the Federal Rules of Civil Procedure, and concerning it Professor Moore states: "It has long been recognized that the directed verdict was a means of removing a case from the province of the jury. The continuation of the requirement for a jury verdict in accord-

ance with the command of the judge was an anomaly that contained the possibilities of serious problems. The anomaly was eliminated in 1963 by the addition of the last sentence to Rule 50 (a) which reads: "The order of the court granting a motion for a directed verdict is effective without any assent of the jury.' The useless act of asking for jury assent is thus eliminated." 5 Moore's Federal Practice 2331, § 50.02 (3).[1]

---

[1]It will be recalled that when, during the reign of Charles II, William Penn and William Mead were indicted for collecting some 300 people on the street and preaching to them the doctrine of what was to become known as Quakerism, in violation of a law prohibiting the congregating of people in or on the streets, the jury returned a verdict of not guilty; whereupon the judge, conceiving the evidence to demand a contrary result directed the jury to return a verdict of guilty, which it refused to do. The jury was then held in contempt of court, fined and imprisoned. On habeas corpus, it was held that the judge was without power to direct what verdict a jury should return. Bushell's Case, Vaughan, 135, 143 (124 Eng. Rep. 1006, 1010). This was so, because the jurors, chosen from the vicinage, were supposedly familiar with the facts and were generally used as witnesses to establish them, while the judge was generally a total stranger. As was pointed out, this lack of power existed both in civil and criminal cases. With a change in the manner of selecting jurors, however, the rule changed also; indeed, jury trials in England have all but disappeared save in criminal matters.

The power of the court to direct verdicts in the courts of both the state and federal systems of this country is well established, with some variations in the various jurisdictions as to when it may be done. Penn. R. Co. v. Chamberlain, 288 U. S. 333 (53 SC 391, 77 LE 819). And see Pedrick v. Peoria & Eastern R. Co., 37 Ill. 2d 494 (229 NE2d 504). Perhaps the rule as stated by Judge Learned Hand in Chamberlain v. Penn. R. Co., 59 F2d 986, 987, has more general applicability than any other: "The most that has been said—probably all that can be—is that there comes a point where the evidence no longer justifies any verdict but one." This well expresses the meaning of *Code Ann.* § 110-104, as does a somewhat similar assertion in *Stepp v. Stepp,* 195 Ga. 595 (2) (25 SE2d 6).

■ The only question remaining is whether a direction of the verdict was demanded by the evidence. If so, an affirmance must result.

While the court is bound to consider the evidence in the light most favorable to the party against whom the verdict is asked to be directed (*Everett v. Miller,* 183 Ga. 343 (188 SE 342); *Curry v. Roberson,* 87 Ga. App. 785 (75 SE2d 282); *Whitaker v. Paden,* 78 Ga. App. 145 (1) (50 SE2d 774)), if having done so, it appears that a verdict for the plaintiff was not authorized and could not stand, the motion for a directed verdict on behalf of the defendant should be granted. *Franklin Finance Corp. v. Head,* 58 Ga. App. 475 (1) (199 SE 59). Mere conflicts in the evidence do not render the direction of a verdict erroneous if it was demanded on the controlling issue or issues. *Stepp v. Stepp,* 195 Ga. 595 (2) (25 SE2d 6).

Where the evidence relied upon to support his case is from the party himself these rules must yield to the rule that if his testimony is vague, contradictory or evasive, it is to be construed against him, and unless he presents other evidence tending to establish his right to recover he is not entitled to a finding in his favor if that version of his testimony the most unfavorable to him shows that the verdict should be against him. *Steele v. Central of Ga. R. Co.,* 123 Ga. 237 (1) (51 SE 438). Thus, in considering the motion where his testimony is conflicting, vague or evasive, he must take the worst construction, but where it is not, he is to be given the most favorable construction.

Plaintiff does not sue on the contract to recover the rentals to which he may have been entitled; he alleges a *breach* of the contract by defendant and sues for damages alleged to arise from the breach.

It is pertinent, therefore, to consider the measure of the damages to be applied. "Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a probable result of the breach." *Sanford-Brown Co. v. Patent Scaffolding Co.,* 199 Ga. 41 (33 SE2d 422).

In *Ga. Power &c. Co. v. Fruit Growers Express Co.*, 55 Ga. App. 520, 527 (190 SE 669), the rule stated in 17 CJ 847 is quoted approvingly: "The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured, is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed." And see *Code* § 20-1406; *Tygart v. Albritton*, 5 Ga. App. 412 (1) (63 SE 521); *Norman & Griffin v. Shealey*, 33 Ga. App. 534 (3, 4) (126 SE 887).

"Where property was leased for hire, the measure of damages for the lessee's breach of contract is the cash value of the contract less any saving which may accrue from the breach." 8 AmJur2d 1217, Bailments, § 330. This principle has been declared in Electrical Products Consolidated v. Sweet, 83 F2d 6 (6), and Rentways, Inc. v. O'Neill Milk & Cream Co., 282 App. Div. 924 (125 NYS2d 282), affirmed in 308 N. Y. 342 (126 NE2d 271). Profits, as used in this context, is to mean "the gain which the plaintiff would have made if he had been permitted to complete his contract." *Wallace v. Tumlin & Stegall*, 42 Ga. 462, 471. Another way of putting it is that the lessor is entitled to recover the equivalent of the specified rentals that would accrue during the remainder of the term, less the expense of performance by the lessor. Demirjian v. Kurtis, 353 Mich. 619 (91 NW2d 841). Included in the items to be taken into account in determining the expense of performance and to be deducted from the contract price in determining the gain or profit to be recovered are savings with respect to maintenance of the trucks (Rentways, Inc. v. O'Neill Milk & Cream Co., supra), and depreciation (Locks v. Wade, 36 N. J. Super. 128 (114 A2d 875)). An item in mitigation is rentals that might have been obtained from a leasing to somebody else, but the burden is on the repudiating party to show that other leasings might have been effected and the amounts that could have been realized therefrom. 5 Corbin, Contracts (1951), p. 256, § 1041; *Waynesboro Planing Mill v. Hargrove*, 33 Ga. App. 684 (127 SE 665).

The burden is on the plaintiff to show both the breach and the damage (*James v. Emmco Ins. Co.,* 71 Ga. App. 196 (30 SE2d 361)), and this must be done by evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of the damages. *National Refrigerator &c. Co. v. Parmalee,* 9 Ga. App. 725 (1) (72 SE 191); *Brenard Mfg. Co. v. Winn-Wilkes Drug Co,.* 31 Ga. App. 200 (1) (120 SE 446). It cannot be left to speculation, conjecture and guesswork. *Studebaker Corp. v. Nail,* 82 Ga. App. 779 (62 SE2d 198). And the rule that in every case of breach of contract the other party has the right to recover nominal damages does not apply when only special damages are sued for and these are not recoverable. *Haber, Blum, Bloch Hat Co. v. Southern Bell Tel. &c. Co.,* 118 Ga. 874 (4) (45 SE 696); *Darlington Corp. v. Evans,* 88 Ga. App. 84, 88 (76 SE2d 72). Punitive damages are not recoverable for mere breach of contract. *Hadden v. Southern Messenger Service,* 135 Ga. 372 (2) (69 SE 480).

With these rules before us we move to a consideration of whether, under the evidence submitted, a verdict for the defendant was demanded. The contract, a copy of which was attached to the petition, discloses the amount of the weekly rentals which Associated agreed to pay for the several items of trucking equipment and the term of the rental. The 80 weeks remaining after the alleged breach at $164 per week, amounted to $13,120. This was the amount of specific damage sued for. But, as we have seen, this is not the measure of recovery. It would have been the amount of *gross* weekly rentals if the contract had been fully performed, but gross receipts and net profits are quite different things. What was his gain or profit? To be deducted was the cost of servicing and maintenance. Past records on these items might have afforded a reliable guide and basis for making a determination as to what the total of the costs would have been to the end of the term. Plaintiff admitted that he had kept records on these items and that at the time of filing suit he had them, but asserted that he had destroyed them prior to trial. "Spoliation of evidence raises a presumption against the spoliator." *Greer v. Andrew,* 138 Ga. 663 (3) (75 SE 1060). Althought he testified that the eight cents

per mile that he got for the trucks (in addition to the weekly rentals), averaging approximately $160 per month, was sufficient to cover the servicing and maintenance, and to cover the depreciation, he failed to disclose or show any figures as to the cost of maintenance and servicing, and the presumption is that if the destroyed records had been produced they would have disclosed that the cost or certainly the cost plus depreciation, exceeded the mileage collected. Concerning depreciation he testified that the five vehicles were, at the beginning of the lease period, worth about $14,000 and that at the end of the period would have been worth about $4,500. A simple calculation indicates that the mileage collected would have been just a little in excess of half the admitted depreciation.

He was asked about his net profit, or the net profit that he would have made if the contract had been fully performed, and could give no figures, saying "I don't know how much profit was in it and I don't know how much loss was in it." He produced no figures as to the taxes paid on the vehicles or the cost of the license plates, or the sales taxes, or of what these might have been expected to be for the remainder of the lease term. He had insurance costs and financing charges which he admitted should be deducted in determining a net profit, but those figures were not produced. He became evasive and equivocal concerning the matter of depreciation, and many of his answers were stricken because not responsive to the questions asked of him. Finally, when asked whether he could tell how much the sum total of depreciation would have been on all of the pieces of equipment he answered, "No, sir. I can't tell you in dollars. Q. But they would have depreciated in some amount? A. Yes, sir. They would have. Q. Each year that went by, simply because of the passage of that year, the equipment would have been worth less—is that correct? A. Yes, sir." How much less? It was not proven, and the jury could not know.

There was no evidence on the matter of damages except that of the plaintiff. In this situation he had failed to carry the burden of demonstrating or showing by data sufficient to enable the jury with reasonable certainty to arrive at the amount of his expected net profit, or of the gain which he had lost by rea-

son of the breach. He might have proven his case by showing a substantial profit in the contract—but he did not, and he had the burden of doing so before he could be entitled to any recovery.

Cases relating to damages claimed for personal injuries and the like have no relevance on the matter of what must be proven to authorize a recovery for the breach of a contract. The rules are wholly different.

The direction of a verdict for the defendant was proper.

*Judgment affirmed. Felton, C. J., and Whitman, J., concur.*