46908. BARNETT et al. v. THOMAS et al.

ARGUED FEBRUARY 1, 1972—DECIDED JUNE 16, 1972—
REHEARING DENIED JULY 6, 1972—

*Martin, Snow, Grant & Napier, George C. Grant, T. Baldwin Martin,* for appellants.

*Jones, Cork, Miller & Benton, E. Bruce Benton, H. Jerome Strickland, George N. Skene,* for appellees.

PANNELL, Judge. This is an appeal from the overruling of a motion for a new trial, and from the overruling of judgment notwithstanding the verdict in a tort action involving an automobile collision, in which judgment was rendered in favor of the plaintiff-appellee and against the defendant-appellants, the driver and owner of a tractor or truck, cab over engine type, used to pull trailer trucks. The locale of the collision was a stretch of Interstate highway with two lanes in each direction; and in bright daylight. The vehicles involved were the tractor (without the trailer), a stationwagon driven by appellee Fassell and another automobile driven by plaintiff-appellee's husband. All vehicles were headed north. The Fassell and Thomas vehicles were traveling in the right lane, the Fassell car in the lead, and as the cars rounded a curve and topped a hill, the tractor was parked on the emergency strip off the right lane about a quarter of a mile or more down the road from the crest of the hill, and was seen by both drivers. The driver of the Thomas automobile gave this version of what occurred. He testified that both the Fassell and Thomas cars were in the right lane and that immediately before the curve, the Fassell car began to slow down slightly and as they went around the curve Thomas could see the truck on the right; that he noticed the road was open in the left lane and, when he was three or four carlengths behind Fassell, and one-third of the way down the hill, he pulled over to the left to pass the Fassell car; that he was gaining on the Fassell car, traveling between 65 to 70 miles per hour, and was almost to the back end of the Fassell car, at a point closer to the truck than the top of the hill, when all at once the Fassell car cut over into the left lane. Thomas hit his brakes to keep from hitting the Fassell car and moved into

the right lane and he saw the tractor directly in front of him in the right lane of the highway at approximately 40 feet ahead. The skid marks showed on the pavement for a distance of approximately 40 to 50 feet before the impact with the truck. The driver of the Thomas car saw the truck only twice. First, when it was parked on the strip when he came over the hill, and the second time when he was only 40 feet from it, too late to avoid hitting it. The explanation was that the Fassell car probably obstructed the view. There was no traffic between the two automobiles and the tractor. There is no evidence there were any other automobiles behind them. A daughter of the Thomases corroborated her father's version of the collision, and that the Fassell automobile cut in very close, within less than a car length, as they were proceeding gradually to pass the Fassell car while the Thomas car was in the left lane. No one in the Thomas car saw the truck pull into the right lane of traffic. No one in the Thomas car could estimate the speed of the truck at the time they first saw it, immediately prior to the collision, except it was going slowly. In attempting to pass the Fassell vehicle, Thomas was gradually speeding up. Thomas testified that he could not have stopped and prevented hitting the stationwagon and that was the reason he cut to the right lane.

Mr. Fassell testified that as he was going down the hill the truck started pulling out, he glanced in his rearview mirror and the side mirror, and approximately 10 car lengths behind he saw the Thomas car in the left-hand lane; that he gave a left-hand blinker signal and proceeded to get into the left-hand lane and was within 30 feet of the truck when the Thomas car passed him on the right and hit the truck in the rear; that he was approximately half way down the hill, or half way down to where the truck was, which was about 700 feet when he got into the left-hand lane and the tractor got into the right lane; that he didn't see the Thomas car any more after he got into the left-hand lane until it passed him on the right. Fassell further testified that the tractor gave no blinker lights or anything

to indicate that he was going to come out into the right lane of traffic; that when he saw the truck beginnning to start out he was going about 65 miles an hour and that he never noticed the Thomas vehicle in the right-hand lane at any point prior to the collision; that he did not know the distance of the Thomas car from his rear when he actually gave his signal and moved into the left lane. Fassell also estimated that when the Thomas car cut to the right, his car was about 30 feet from the truck and at the time of the impact of the Thomas car with the truck he was about 15 to 20 feet from the truck; that when the Thomas car pulled up to his right he started slowing down. He also testified that when he first pulled into the left-hand lane to pass the truck he was running at a speed that was slower than the Thomas vehicle. On cross examination, Fassell testified that when he was about half way down the hill he moved into the left lane and the truck moved into the right lane, the two cars being approximately 750 feet apart. He further testified that he considered the distance between him and the truck and between him and the Thomas car to be perfectly safe for him to switch to the left lane. Fassell estimated the speed of the truck at 30 miles an hour at the time of impact and was picking up speed.

Barnett, the driver of the tractor, testified that he had trouble with the generator and pulled on to the emergency strip and stopped to check it, and found out the generator was not working. He looked in the mirror and saw two cars coming down the highway and waited for them to pass. After they passed him he looked again in the mirror and saw nothing for a split second, and as he started to move, and right before he cut into the right lane, he looked again and saw the Fassell car come over the hill in the right lane, and while he was looking Fassell's turn signal came on and Fassell started to move over to the left lane, and as he moved over to the left lane Barnett moved into the right lane. There was no car behind the Fassell car in the right lane. Barnett started in second gear and shifted into third, and was shifting into fourth when the collision occurred.

He estimated he was going between 25 and 30 miles an hour at the time of impact and had traveled approximately 37 to 39 feet. In explaining the operation of the tachometer, which Barnett said was almost necessary for a tractor truck, he testified as follows: ". . . because for one thing so you can keep your engine running at a constant speed. Another thing whenever you are driving a truck pulling a load, if you say you are going up a hill pulling a heavy load, you are running in a headwind or something for some reason that you are driving in a gear where you can't make it—maintain certain rpms, then you are supposed to shift gears and so you don't lug the engine and another thing is that whenever you are shifting gears in the truck, the transmissions aren't synchronized like they are in a car and you have to rev the engine up to a full speed and then let it die down to a certain speed before the transmission will go into the next gear so you just keep your eye on the tachometer. Whenever you rev it up and then let off on it and it dies down to a certain speed you know you can put it into the next gear," and, "To shift from second to third gear—second gear is straight down. You shift from second to third gear, you let your foot off of the accelerator at the same time and push in on the clutch and shift it into neutral, take your foot off the clutch and push your clutch back in and if the engine has died down to around 7—1650— 1700 rpms, you pull it into third gear." Then when asked what he actually did on the occasion in question, after getting the truck into third gear, he testified as follows: "I wound it all the way into third gear and took it out of third gear and put in into neutral and was going to shift into fourth gear and before I could get the gear shift lever into fourth gear, I was hit from behind."

The above recitation of facts substantially covers the situation as disclosed by the statements of fact and the page references to the 408 page transcript made by the appellants in their briefs and by the plaintiff-appellee in her briefs. See in this connection, *Ga. Stainless Steel Corp. v. Bacon,* 120 Ga. App. 239 (170 SE2d 270).

The plaintiff-appellee, in answer to the contentions there was no evidence to authorize a verdict against the appellant, made the following contentions: "The appellants contend that there was no evidence showing any negligence on the part of appellant's driver Larry Lee Barnett. This contention is without merit and will not stand up to analysis. (1) Referring back to this appellee's statement of the case, it is clearly shown by the testimony referred to therein that Larry Lee Barnett was inattentive to his driving in that his attention was focused on the tachometer. (2) It further shows that he pulled out suddenly in front of these oncoming vehicles to such an extent that he caused the Fassell vehicle to swerve left in front of the Thomas vehicle. (3) He pulled his vehicle out onto a busy interstate when such movement could not be made with reasonable safety. He failed to yield the right of way. (4) He created the chain of events causing the accident and was the primary cause of the accident." (The numbering is by the court.)

The allegations of negligence insofar as they pertain to the driver of the tractor are as follows: "(c) Defendant Larry Lee Barnett in driving his vehicle from a stopped or standing position into the right hand lane of the two northbound lanes of I-75 when such movement could not be made with reasonable safety in violation of Georgia Code Annotated 68-1646 (Georgia Laws 1953, Nov. Scss., pp. 556, 587) which is and was negligence per se; (d) Defendant Larry Lee Barnett in driving his vehicle in the right-hand lane of the northbound lanes of I-75 at a speed less than 40 miles per hour in violation of Georgia Code Annotated 68-1625 (b) (3) (Georgia Laws 1953, Nov. Sess., pp. 556, 577; 1959, p. 303; 1961, pp. 438, 439; 1963, p. 26; 1964, pp. 294, 295; 1965, p. 322; 1968, p. 987; 1968, p. 1158; 1968, pp. 1427, 1428, 1429) which is and was negligence per se; (e) Defendant Larry Lee Barnett in driving his vehicle in the right hand lane of the northbound lanes of I-75 at such a slow speed as to impede and block the normal and routine movement of traffic in violation of Georgia Code Annotated Sec. 68-1629 (Georgia Laws 1953, Nov. Sess., pp. 556, 580)

which is and was negligence per se."

The evidence by Barnett explained the use of the tachometer and his use of it on the occasion in question does not authorize a finding that he was inattentive to his driving or that his attention was focused on the tachometer, or that he was looking at the tachometer rather than looking to see if any vehicles were approaching as he was moving into the right lane. There were no vehicles in the right lane as he moved into it.

The uncontradicted evidence shows that when the tractor emerged from the parking strip and into the right lane of the highway there was no traffic in that lane in such close proximity as to constitute a hazard. The only circumstance to indicate to the contrary is the testimony that the Fassell automobile made a sudden change of lane from the right lane to the left lane. In our opinion, this alone is not sufficient to authorize a finding that the tractor truck, by entering the right lane, created an emergency which caused the Fassell automobile to make a sudden unexpected change of lanes, when all the witnesses as to the Fassell automobile switching lanes place this change anywhere from approximately 700 feet to 440 feet before reaching the spot where the tractor originally stopped.

The minimum speed of 40 miles per hour does not apply to a vehicle entering the highway from the emergency strip, until there has been reasonable opportunity to attain this speed. *Thomas v. Barnett,* 126 Ga. App. 89 (190 SE2d 90). The evidence fails to show any negligence in this respect. It either shows that the driver of the tractor was gaining speed rapidly, or if it shows that he was going slowly, it does not affirmatively show that he had a reasonable opportunity to go any faster.

That his coming out into the right lane may have been the reason Fassell went into the left lane, that is, that he created "the chain of events" resulting in the collision, does not make him or his master liable unless he did so negligently.

We conclude, therefore, that the plaintiff failed to prove

her case, the burden being upon her to produce evidence of the driver's negligence. The trial court erred in refusing to direct a verdict and in refusing to grant the motion for judgment notwithstanding the verdict.

*Judgment reversed. Hall, P. J., and Quillian, J., concur.*