## 57481. INGLETT v. RATLIFF.

Smith, Judge.
We reverse the trial court's grant of appellee Ratliff's motion for a directed verdict.

Appellants, Inglett and his mother, brought this action for injuries sustained when Inglett, while riding his bicycle, collided with a car driven by appellee. Inglett and a friend were bicycling home from school when the collision occurred. The testimony showed that appellee first sighted the two boys from a distance of two hundred yards. They were proceeding toward appellee, in his lane of traffic. When the two saw appellee, they switched lanes, and Inglett took up a position just to the right of the center line. The impact occurred when Inglett lost control of his bicycle and suddenly swerved over the center line into appellee's path. Appellee testified that just before the accident he was traveling at a speed of twenty miles per hour and that he applied his brakes "as quick as [he] could," when he sighted Inglett directly in front of the car, at a distance of about ten feet.

We cannot agree that the evidence introduced demanded a verdict in favor of appellee. " 'Questions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.' " *Atlanta Coca-Cola Bottling Co. v. Jones,* 236 Ga. 448 (224 SE2d 25) (1976). "[W]here there is no dispute as to the facts, and they amount to a confession of liability as a matter of law, a directed verdict is warranted. But this is not such a case; such cases are rare, and without an admission of liability or an indisputable fact situation that clearly establishes liability, it is error for the trial judge to direct a verdict on the issue of liability in favor of either party." Id., p. 450. The evidence introduced was inconclusive as to whether appellee, in the exercise of reasonable care, should have reacted more quickly than he did to Inglett's peril and as to whether appellee reasonably should have taken other precautions when he sighted Inglett approaching on his bike, very near the center line and accompanied by another young cycler. It was for the jury to decide those and the other questions governing the issue of appellee's liability for the injuries sustained.

*Judgment reversed. Quillian, P. J., McMurray, P. J., and Carley, J., concur. Banke, J., concurs specially. Deen,*

*C. J., Birdsong and Underwood, JJ., dissent. Shulman, J., not participating.*

ARGUED MARCH 13, 1979 — DECIDED
JULY 12, 1979.

*Richard B. Eason, Jr.,* for appellant.
*Beck, Goddard, Owen & Murray, Samuel A. Murray,* for appellee.

BANKE, Judge, concurring specially.

1. The appellate courts of Georgia have long held that questions of negligence are *peculiarly* matters for the jury, not the court, to resolve, except in clear, plain, palpable and indisputed cases. The reason why such matters are peculiarly for the jury is because what is negligence to one person may not be negligence to another. That is why we need the enlightened consciences and experience of 12 jurors to determine what is or is not negligence.

2. I also find a fact issue in this case because the appellant was only 14 years of age at the time of the auto-bicycle collision. Motorists owe children a greater duty than they owe adults. It goes without saying that a child simply does not exercise the same degree of care for his safety as an adult would under similar circumstances. Furthermore, children can be expected to make sudden and erratic movements more often than adults. See generally *Hieber v. Watt,* 119 Ga. App. 5 (165 SE2d 899) (1969) and *Kennedy v. Banks,* 119 Ga. App. 831 (169 SE2d 180) (1969).

When the appellee first saw the appellant 200 yards away, traveling toward him in appellee's own lane of traffic, should he have continued at his same speed, slowed down, or realizing that a very confused person was riding a bicycle in the wrong lane, pulled off to the side of the road? Should he have maintained his position close to the middle line when he saw the bicyclist to be a child, or should he have pulled over to the right side as far as his lane of traffic would permit? Such questions are best resolved by a jury.

BIRDSONG, Judge, dissenting.

" 'Questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases'. . . However, where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom, shall demand a particular verdict, the court should direct the jury to find for the party entitled thereto." *Barnett v. Thomas,* 126 Ga. App. 587 (191 SE2d 450).

The evidence as adduced in the instant case demands a verdict for the defendant (appellee) and the trial court was correct in directing a verdict for the defendant below, appellee herein.

The injured party in this case had no memory as to what happened. The testimony as to this unfortunate accident came from two witnesses, Anthony Glen Shockley, a friend of the injured party who was riding bicycles with him at the time of the accident and the appellee.

Shockley testified in part as follows: "We was [sic] riding just normal, just going home, and Jeff, of course, was in front of me, that would be on my left side, and his left foot slipped off the pedal and his right knee come [sic] up and hit the handlebars, and he was out of control and he went over there on the left side of the road, and he said, Oh, my god, and that was the last thing, and he got hit. . . Q. To the time Jeff came into contact with the car. You said his foot slipped off and his knee hit the handlebar. How much time was it between the time his foot first slipped off and the time the car hit him? A. The distance? Is that what you said? Q. Well, in distance or time. A. Well, it was so sudden I really didn't get down and measure it or anything. It was just so fast. . . Q. When you were coming along, before the wreck happened, you were coming along down the street there at the ball park, could you tell us whether or not Jeff and his bicycle would have been over the center line of the street? A. It was not over the center line. . . Q. Did you ever see Mr. Ratliff's car come across the road into your lane of traffic? A. No. sir, I didn't. Q. And where the accident occurred, was that over

in the southbound lane of traffic across the center line? A. Yes, sir. . . Q. You say Jeff's left foot came off the pedal and something about his right knee jacked up and hit the handlebar and knocked him across the center line. Is that right? A. Yes, sir. . . Q. How far from the point of impact, how much further from the point of impact did Mr. Ratliff's car travel? A. About two or three feet. Q. A very few feet. A. Yes, sir. . . Q. Tony, insofar as the place where the point of inpact occurred, I'm not sure if I asked you or whether you said you didn't know or what, but do you know how far that was from the center line of the road? A. You asked me that and I said I didn't know. Q. But at any rate you're sure of the fact that it was over in Mr. Ratliff's lane? A. Yes, sir." Appellee Ratliff testified, in part as follows: "Q. At that point what speed were you traveling, Mr. Ratliff? A. I'd say about twenty mile [sic] an hour. . . Q. Is that the speed you normally drive? A. Yes, sir, I'd say normal, yes, sir. . . Q. Where were the boys on the street when you saw them for the first time? A. They were riding in my lane of traffic and as they, I thought, seen [sic] me, got over in the opposite lane and rode on towards me. Q. Was the boy riding the bicycle that was subsequently involved in the accident with you, in your right lane coming towards you when you first saw them? A. They were in my driving lane coming towards me, yes, sir. They got over immediately after I seen [sic] them. I figured they seen [sic] me. Q. And how far away were the boys on the bicycles when you saw them for the first time? A. About — I'd say approximately two hundred yards. Q. How did your car come into contact or hit Jeff Inglett on the bicycle? A. Well, as Jeff approached me I approached him, and just all of a split second, just a flash, . . . he darted in front of me and I put on brakes and swerved to the right, and as my car stopped it come [sic] to rest against the curbing on the right hand side and he hit me on the left front fender. Q. The front part of your car didn't come in contact with Jeff? A. I found a small dent later in my left fender. . . Q. Mr. Ratliff, did you sound the horn on your car at any time before the wreck? A. Did I do what? Q. Sound the horn on your car? A. No, sir, I did not; I didn't have time to sound the horn. It was done in a flash and that's the reason I didn't have time to sound the horn. Q.

Did you apply the brakes of your car at any time before the wreck happened? A. Well, I applied them just about the time it happened. I don't know whether I applied them before it happened, but I think I applied them just as quick as I could. As I said, I swerved to the right. Q. How far would you say Jeff was from your car when you applied brakes for the first time? A. I'd say maybe ten foot [sic]."

From the evidence set forth above, it is apparent that the appellee could not be guilty of any negligence.

It is unquestioned that the appellee was in his lane of traffic, was proceeding at a reasonable speed (20 m.p.h. and speed limit was 35 m.p.h.) and no evidence of any misconduct in driving on the part of the appellee was shown.

It is equally unquestioned that the injured party's (Jeff Inglett) left foot slipped off the pedal, his right knee came up and hit the handlebars, and he simultaneously went out of control into the lane of traffic of the appellee.

In *Layton v. Knight,* 129 Ga. App. 113 (198 SE2d 915), Judge Hall, now Justice Hall, referred to *Georgia R. &c. Co. v. Harris,* 1 Ga. App. 714 (57 SE 1076) and stated "[t]here must be more than a 'scintilla' of circumstances to carry the case to the Jury."

A mere scintilla of inconclusive circumstances, giving no scope for legitimate reasoning by the jury, does not create a genuine issue of fact. *King v. Barrett,* 107 Ga. App. 122 (129 SE2d 393); *Young v. Proctor,* 119 Ga. App. 165, 166 (166 SE2d 428). See also *Rosenfeld v. Gay,* 117 Ga. App. 35 (159 SE2d 447); *Bennett v. Associated Food Stores,* 118 Ga. App. 711 (165 SE2d 581).

The evidence demands a verdict for the appellee and the trial court was correct in directing a verdict for the appellee (defendant below). I would therefore affirm the judgment of the trial court, and I respectfully dissent.

I am authorized to state that Chief Judge Deen and Judge Underwood join in this dissent.