A94A0097. CONTINENTAL INSURANCE COMPANY v. STATE FARM MUTUAL INSURANCE COMPANY.

(443 SE2d 509)

BLACKBURN, Judge.

On August 23, 1991, Bryan Staggs was involved in a motor vehicle collision with Freddie and Jennie Giddens. Subsequently, State Farm Mutual Insurance Company commenced this declaratory judgment, seeking a determination that an insurance policy it originally

issued to Staggs for a six-month term from March 1991 through September 1991 had been cancelled, effective July 3, 1991, and thus provided no coverage for the collision.

Staggs defaulted in the action, and Continental Insurance Company was subsequently added as the uninsured motorist carrier for the Giddenses. Following trial in the matter, the jury returned a verdict for Continental and the Giddenses. However, the trial court directed a verdict for State Farm, and this appeal resulted.

State Farm was the original issuer of an automobile liability insurance policy to Staggs. At trial, State Farm showed that on June 20, 1991, it mailed to Staggs a notice of cancellation, effective July 3, 1991, because of his failure to pay a policy premium due in May 1991. It also produced a United States Postal Service proof of mailing list confirming the mailing.

At the inception of the trial, the trial court entered a default judgment against Staggs. However, Continental was allowed over State Farm's objection to adduce Staggs' deposition testimony, in which he denied ever receiving the notice of cancellation but noted that he and his loss payee did receive a notice of non-renewal of the policy on July 30, 1991. State Farm's underwriting operations superintendent acknowledged that notice of non-renewal, but explained that State Farm had issued two policies to Staggs' household, one covering Staggs' vehicle and the other covering his wife's automobile. Although it was not mailed until July 30, 1991, that notice of non-renewal had been generated several weeks before the cancellation of Staggs' policy due to an earlier problem with Staggs' driving record, and had included both vehicles as a matter of convenience.

At the close of the trial, State Farm moved for directed verdict on the grounds that (1) Staggs' default constituted an admission in judicio, binding on his co-defendants, that State Farm had properly cancelled the insurance policy issued to Staggs, and (2) inasmuch as State Farm had shown a proper mailing of the cancellation notice, it was legally irrelevant whether or not Staggs actually received it. The trial court initially deferred ruling on the motion, but, after the jury's verdict in favor of the defendants, ultimately directed the verdict for State Farm.

In doing so, the trial court found that the only evidence controverting State Farm's showing of a proper cancellation of the policy in question was Staggs' deposition testimony. However, because Staggs' default constituted an admission in judicio binding upon all co-defendants whose interests in the matter were not adverse to Staggs', that deposition testimony had no probative value. On appeal, Continental contends that the trial court improperly used Staggs' default as an admission against all the co-defendants.

1. Initally, we note that the trial court reserved ruling on State

Farm's motion for directed verdict until the jury reached a verdict, but directed the verdict for State Farm without entering judgment on the jury's verdict. In several recent cases involving this same procedure, this court has reversed the trial court's judgment, with direction that judgment first be entered on the jury's verdict, and then the parties could pursue appropriate post-judgment remedies. *Fabian v. Dykes*, 210 Ga. App. 703 (436 SE2d 819) (1993); *Wright v. Millines*, 204 Ga. App. 111 (418 SE2d 453) (1992); *Anaya v. Brooks Auto Parts*, 203 Ga. App. 485 (417 SE2d 423) (1992). In support of its conclusion in *Anaya*, this court cited *Connell v. Long*, 248 Ga. 716 (286 SE2d 287) (1982). However, that reliance was misplaced, because this court treated *Connell* as a case involving a post-verdict grant of a motion for directed verdict, when *no motion for directed verdict* was filed in the case, and there had been *no reservation of its ruling* on such motion by the trial court as is herein involved.

It is the better practice in those cases, where the trial court reserves ruling on a motion for directed verdict and submits the case to the jury which renders a verdict, to enter judgment on the jury's verdict and to *then* rule on the motion for j.n.o.v., pursuant to OCGA § 9-11-50. Where, however, the trial court fails to follow this procedure and enters judgment on the motion for directed verdict without first entering judgment on the jury verdict, nothing is gained by returning the case to the trial court for entry of judgment on the jury verdict, which the trial court would then be authorized sua sponte to vacate and re-grant the motion for directed verdict. As stated by Judge Johnson in his dissent in *Anaya*, "[a]ll of this is totally unnecessary and could be obviated by simply reaching the merits of the main appeal at the present time."

Prior to *Anaya* and its progeny, neither this court nor the Supreme Court insisted on strict adherence to the literal terms of the Civil Practice Act provisions on directed verdicts. "[I]t has been held that a motion for directed verdict is not essential where the evidence demands the verdict, for if it demands it, the granting of the verdict by the court is valid despite the court's failure to obey the procedural law in the Civil Practice Act. [Cits.]" *Gleaton v. City of Atlanta,* 131 Ga. App. 399 (206 SE2d 46) (1974). Considerations of judicial economy as codified in OCGA § 9-11-50 have been found to militate in favor of allowing a trial court to grant *post-verdict* a motion for directed verdict, even though no motion for judgment n.o.v. was filed. See *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419 (249 SE2d 224) (1978); *Brandvain v. Ridgeview Institute*, 188 Ga. App. 106 (372 SE2d 265) (1988).

Believing that the present law frustrates judicial economy and efficiency and adds a needless layer of complexity to post-trial practice in this state, we hereby expressly overrule the holdings in *Wright,*

*Fabian,* and *Anaya,* to the extent they are inconsistent with this opinion. We now hold that where an appeal is otherwise properly before this court, we will consider the merits of the appeal where the trial court reserved ruling on a motion for directed verdict and then directed a verdict *after* the jury has rendered a verdict but *before* there has been an entry of judgment on that verdict, where no special harm results to either party from such consideration.

2. Where a defendant tortfeasor defaults and thereby waives his right to defend against the action, "his waiver and default can not be permitted to injure the statutory right of the [uninsured motorist] insurer to defend the action in its own name, which would be the result if the insurer were held to be bound by the defendant's admissions. . . ." *Ga. Mut. Ins. Co. v. Willis,* 140 Ga. App. 225, 226 (230 SE2d 363) (1976). We agree with Continental that under *Willis,* it was entitled to use Staggs' deposition testimony in its defense of State Farm's declaratory judgment action.

State Farm attempts to distinguish *Willis* from the instant case on the basis that it involved an uninsured motorist carrier's statutory right to defend in the tort action, rather than a declaratory judgment action. However, in *Peek v. Southern Guaranty Ins. Co.,* 240 Ga. 498 (241 SE2d 210) (1978), the Supreme Court applied *Willis* in a declaratory judgment action without making such a distinction, and we likewise decline to do so. "[T]he default of the [former] insured in the case before us is deemed to be an admission by him of the plaintiff's right to recover, but only against him." *Peek,* supra at 499.

Nevertheless, even considering Staggs' deposition testimony, the evidence still demanded a verdict for State Farm. OCGA § 33-24-45 (c) (1) authorizes cancellation of an insurance policy where the named insured fails to pay a premium when due. Under OCGA § 33-24-45 (d), notice of cancellation is effective only if mailed or delivered as indicated in OCGA § 33-24-44. In this regard, OCGA § 33-24-44 (b) requires notice of cancellation to be delivered in person or by depositing it in the United States mail to the last address of record of the insured, and obtaining a receipt from the United States Postal Service or other such evidence of mailing. A stamped "PORS" list constitutes such a receipt as contemplated by OCGA § 33-24-44 (b). *Hill v. Allstate Ins. Co.,* 151 Ga. App. 542 (260 SE2d 370) (1979).

In the instant case, State Farm adduced both a stamped "PORS" list showing the mailing of the cancellation notice to Staggs on June 20, 1991, as well as the testimony of its employee who personally (1) verified that the cancellation notice was placed in an envelope with the correct postage, (2) took the notice to the post office for mailing, and (3) obtained the stamped "PORS" list from the postal worker. Staggs' deposition testimony that he did not receive the cancellation notice, or that he received a notice of non-renewal after the alleged

cancellation, does not controvert that evidence of State Farm's compliance with the statutory requirements for effective cancellation.

Whether or not Staggs actually received the cancellation notice is legally irrelevant. *Maddox v. Allstate Ins. Co.*, 164 Ga. App. 21 (296 SE2d 84) (1982). "The statute only requires proof of mailing, not receipt by the insured of the notice of cancellation. [Cit.]" *State Farm Mut. Auto. Ins. Co. v. Harris*, 177 Ga. App. 826, 828 (341 SE2d 472) (1986). State Farm's proof of mailing having been uncontroverted, its cancellation of the policy issued to Staggs was effective July 3, 1991, and no coverage existed under that policy with regard to the collision between Staggs and the Giddenses on August 23, 1991. Accordingly, the trial court properly directed verdict for State Farm.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Cooper, Johnson and Smith, JJ., concur. McMurray, P. J., Beasley, P. J., and Andrews, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent, as it is my view that if this Court follows the holding and proposal of the majority, this action would be tantamount to an implicit overruling of the Supreme Court of the State of Georgia in *Connell v. Long*, 248 Ga. 716 (286 SE2d 287).

In *Connell v. Long*, 248 Ga. 716, 718 (1), 719, supra, those appellants complained that the trial court was without authority to enter a judgment notwithstanding the verdict prior to entry of a judgment on a jury's verdict and the Supreme Court held that "the trial court should not in effect have entered a judgment notwithstanding the verdict on [a] legal claim [that was properly resolved by a jury] prior to entry of judgment on the verdict. [*Wall v. C & S Bank of Houston County*, 153 Ga. App. 29, 30 (2) (264 SE2d 523), affirmed 247 Ga. 216 (274 SE2d 486)]." *Connell v. Long*, 248 Ga. 716, 718 (1), 719, supra. The Court of Appeals of the State of Georgia recently acknowledged this procedural rule as controlling authority in *Anaya v. Brooks Auto Parts*, 203 Ga. App. 485 (1), 486 (417 SE2d 423), and a majority of the Court of Appeals recognized the binding effect of the Supreme Court's holding in *Connell*. Nonetheless, the majority in the case sub judice revisits this debate and now states that the logic of *Anaya* "was misplaced, because this Court treated *Connell* as a case involving a post-verdict grant of a motion for directed verdict, when *no motion for directed verdict* was filed in the case, and there had been *no reservation of its ruling* on such motion by the trial court as is herein involved." It is my view, that this distinction marks no demarcation between *Connell* and the case sub judice. On the contrary, the circumstances of the cases are the same, i.e., the trial courts entered judgments notwithstanding verdicts before entry of judgments on jury verdicts.

"It is as elemental as ABC that the Court of Appeals is bound by decisions of the Supreme Court." *Hogan v. State*, 118 Ga. App. 398, 400 (163 SE2d 889). In the case sub judice, the majority would overrule three decisions of the Court of Appeals which follow the Supreme Court's lead in *Connell v. Long*, 248 Ga. 716, 718 (1), supra. It is my view, that overruling these decisions would be tantamount to an implicit overruling of the Supreme Court of the State of Georgia in *Connell v. Long*, 248 Ga. 716, supra, and that any ruling on the merits of the case sub judice is premature and void. OCGA § 9-12-16. Consequently, I would reverse the case sub judice with direction that judgment be entered on the jury's verdict. Post judgment remedies may thereafter be pursued. See *Anaya v. Brooks Auto Parts*, 203 Ga. App. 485 (1), 486, supra. Compare *Anthony v. Anthony*, 236 Ga. 508, 509 (224 SE2d 349), where the Supreme Court dismissed the appeal under similar circumstances.

I am authorized to state that Presiding Judge Beasley and Judge Andrews join in this dissent.

BEASLEY, Presiding Judge, dissenting.

I agree with the other dissent. Even if we would not be departing from the precedent set in *Connell v. Long*, 248 Ga. 716 (286 SE2d 287) (1982), we should not set aside the rules of proper procedure or create exceptions thereto, without analyzing the consequences of doing so. The expressly delineated procedure set out in the Civil Practice Act § 50 has been in existence for almost 30 years, and if it need not be adhered to, it should be changed rather than ignored. Section 58, for example, governs the entry of judgment. There has been no judgment entered in this case, so it is difficult to identify what appealable decision gives the right to a direct appeal. See OCGA §§ 5-6-34 (a) (1); 5-6-38 (a).

How can a verdict be directed after the jury returns *its* verdict and is disbanded, as was done here?[1] The verdict was returned on July 1 and entered on July 2, and the order granting the motion for directed verdict was entered on July 7. The appeal is from the order, not from any judgment.

The procedure utilized is further confused by the effort of plaintiff to move for j.n.o.v. or for new trial pursuant to OCGA § 9-11-50 (b) four days after the verdict was entered, but there was no judgment. Subsection (b) provides that such a motion may be made "[n]ot later than 30 days after entry of judgment." This was even before the motion for directed verdict was ruled on. The plaintiff's subsection

---

[1] Compare *Bennett v. Associated Food Stores*, 118 Ga. App. 711, 712 (1) (165 SE2d 581) (1968), which held in a case where there was no verdict that the court could direct one after dispersal of the jury.

(b) motion was never ruled on. However, the court did deny defendant's motion for reconsideration of the order granting a directed verdict to plaintiff.

Certainly the administration of the judicial system should seek to achieve "the speedy, efficient, and inexpensive resolution of disputes," 1983 Ga. Const., Art. VI, Sec. IX, Par. I. In that regard, it may be high time to revisit the Civil Practice Act and streamline the process so as to reduce costs and delay while maintaining order, predictability, and due process. However, a departure such as the one employed here not only fails to take into account the ramifications of failing to enter judgment on the jury verdict but also invites other piecemeal alterations based on consideration of discrete cases. Amendment to the Civil Practice Act in such a fashion lacks wisdom and authority.

I am authorized to state that Presiding Judge McMurray and Judge Andrews join in this dissent.

DECIDED MARCH 22, 1994 —
RECONSIDERATION DENIED APRIL 7, 1994.

*Brannen, Searcy & Smith, David R. Smith, Wayne L. Durden,* for appellant.

*Duffy & Feemster, Robert J. Duffy, Dwight T. Feemster, Jo Beth Gosdeck, Kent, Williamson & Brannon, A. Martin Kent, Doris E. Brannon,* for appellee.