[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14524

_____

D.C. Docket No. 1:06-cv-01457-TWT

VEOLIA WATER NORTH AMERICA
OPERATING SERVICES, LLC,
f.k.a. U.S. Filter Operating Services, Inc.,

Plaintiff-Counter Defendant-
Cross Defendant-Appellant-
Cross Appellee

VEOLIA ENVIRONNEMENT, S.A.,
f.k.a. Vivendi Environnement, S.A.,

Plaintiff-Counter Claimant-
Cross Defendant-Appellant-
Cross Appellee

versus

CITY OF ATLANTA,

Defendant-Counter Defendant-
Counter Claimant-Cross Claimant-
Appellee-Cross Appellant.

_____

Appeals from the United States District Court
For the Northern District of Georgia

_____

(October 18, 2013)

Before JORDAN and KRAVITCH, Circuit Judges, and ALBRITTON,[*] District Judge.

PER CURIAM:

This case arises from a contract dispute between the City of Atlanta and Veolia Water North America Operating Services, LLC regarding the improvement, operation, and maintenance of four City-owned wastewater treatment facilities. Both parties claimed breach, and, after an 11-day bench trial, the district court awarded Veolia $21 million in damages and the City $11 million in damages. Both parties have now appealed that judgment.

Veolia appeals the award to the City of over $9 million for the lease and operating expenses of replacement belt presses, $302,333 for two damaged digester lids, and $948,608 in prejudgment interest. The City appeals the award to Veolia of approximately $3.8 million in prejudgment interest and the denial of its request for attorney's fees. After review and with the benefit of oral argument, we affirm in part, reverse in part, and remand for further proceedings.

## I.  Background & Facts

Because we write only for the parties, we assume their familiarity with the extensive record in this case, and only restate those facts necessary for our decision.

---

[*] Honorable W. Harold Albritton, United States District Judge for the Middle District of Alabama, sitting by designation.

In April of 2001, the City of Atlanta released a request for proposal for an alternative method of waste disposal at its wastewater treatment facilities. The City eventually awarded Veolia the contract, and the two parties executed a service agreement in August of 2002. The agreement called for Veolia to operate and maintain part of the facilities for ten years on condition that Veolia accept the facilities "as is." It also required Veolia to provide a letter of credit that the City could draw upon if Veolia defaulted on the agreement.

In December of 2002, Veolia took over the facilities' dry side operations under the terms of the agreement. Over time, the four digester tanks at the RM Clayton facility—which had not been cleaned in years—began to fall into disrepair.[1] Although another company had been awarded a contract to clean the digester lids at RM Clayton, the City delayed that work until after Veolia had installed new centrifuges that were expected to improve the digester conditions and lower costs. As a result, digester tank cleaning at RM Clayton did not begin until October of 2004.

In March of 2005, the digester tanks at RM Clayton began to operate near or above their maximum capacity. By April 8, 2005, the lid for one of the digester tanks collapsed under the weight of the excess waste. Another digester lid suffered

---

[1] The treatment process used at the City's facilities called for concentrated waste to be pumped into large, concrete digester tanks where the waste would be further reduced through anaerobic digestion.

3

the same fate on December 31, 2005. After the digester lids collapsed, the City had to lease out belt presses from Synagro Technologies, Inc. The belt presses provided a substitute method for processing waste until the digester lids could be replaced.[2] The City used the belt presses at RM Clayton for approximately two years.

On July 10, 2006, the City served Veolia with a notice of termination for purported breaches of the service agreement. The City also drew upon Veolia's letter of credit in full for $9,525,304. Veolia, in turn, sued the City to recover on unpaid invoices and various operating expense increases. The City answered and asserted its own breach of contract claims against Veolia. The case proceeded to a bench trial.

After the trial, the district court concluded that both parties had breached the agreement. As to Veolia, the district court found that it had caused the digester lids to collapse, and was liable for the remaining value of the digester lids and the expenses the City incurred from leasing the belt presses. As to the City, the district court found that it owed Veolia for unpaid work and had to return the full amount of the letter of credit because the City had wrongfully drawn on the letter.

Both parties filed motions to alter or amend the judgment. Veolia argued that the City's recovery for belt press expenses was improper because the City had not

---

[2] Ordinarily, waste at RM Clayton was transferred from the digester tanks to centrifuges and then to incinerators. But when the City switched to belt presses, waste went directly from the digester tanks to the belt presses and bypassed the centrifuges and incinerators.

proven avoidance costs or, alternatively, the award was subject to a $2 million cap under the agreement; the digester lids had no remaining monetary value; and it was owed prejudgment interest. The City, for its part, sought to recover its attorney's fees. The district court denied all of the requested relief except for Veolia's claim for prejudgment interest. This appeal followed, and the parties presented oral argument to the panel.

## II. Discussion

"After a bench trial, we review the district court's conclusions of law *de novo* and . . . factual findings for clear error." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009) (citation omitted).  Because this is a diversity case, we "look[] to state law as to substantive matters but procedural matters are governed by federal law." *Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir. 1986) (citing to *Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965)).

On appeal, both parties raise the arguments made in their respective Rule 59(e) motions. They also raise separate issues relating to the district court's award of prejudgment interest. Veolia argues that its award should not have been reduced by the amount of prejudgment interest that the City would have been entitled to. And the City argues that Veolia should not have been awarded prejudgment interest on the letter of credit. We turn to all of these issues below.

### A. The Belt Presses

5

In its order, the district court concluded that the City was entitled to recover $9,032,469.19 in expenses that it had incurred for the replacement belt presses. That award represented the full amount that the City had paid Synagro. The district court did not offset the award in any way because it also found that Veolia had failed to provide any evidence that damages could have been mitigated or that the City had avoided significant operating expenses.

First, we address Veolia's argument that the City's belt press damages were consequential damages and, therefore, subject to a $2 million cap under the terms of the agreement. The district court found that Veolia had waived this argument because "it never invoked the [$2 million cap provision] at any time during the trial . . . [and] [i]t never referred to [the provision] in its proposed findings of fact and conclusions of law." D.E. 392 at 9.[3]

"We review a district court's procedural ruling on waiver of an affirmative defense for abuse of discretion." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350 n.9 (11th Cir. 2007) (citation omitted). Veolia argues that it did not waive this argument because it asserted the consequential damages limitation in the pretrial order and one of the City's witnesses testified that the belt press expenses were "an alleged consequence" of the digester lid collapses. But Veolia also attempted to

---

[3] The district court made an alternative finding that Veolia was judicially estopped from raising this argument. We do not address that ruling because of our holding that the argument was waived.

prove at trial that it was entitled to recover for all of the belt press expenses even though the same contract provision prevented Veolia from recovering any consequential damages. Thus, Veolia adopted a position at trial that was entirely inconsistent with the argument it now raises on appeal, and it never indicated at trial or in its proposed findings of fact and conclusions of law that it was seeking to assert the consequential damages cap as an argument in the alternative. Under those circumstances, it was not an abuse of discretion for the district court to conclude that Veolia had waived its consequential damages argument. *See United States v. Indiana Bonding & Sur. Co.*, 625 F.2d 26, 29 (5th Cir. 1980) (holding that defense was waived, even though it was listed in the pretrial order, when insufficient evidence was presented at trial and it was not listed in the defendant's proposed findings of fact and conclusions of law).

Second, we consider Veolia's argument that the City is not entitled to damages on the belt presses because the City did not include the operational costs that it avoided by using the presses into its damages calculation. Under Georgia law, a calculation of damages requires consideration of any expenses that were avoided but otherwise would have been incurred in the absence of breach. *See Hosp. Auth. of Charlton Cnty. v. Bryant*, 277 S.E.2d 322, 324 (Ga. Ct. App. 1981). At trial, Veolia elicited testimony from the City's lead witness that costs savings resulted from not having to operate the centrifuges and incinerators while the belt

7

presses were in use. *See* D.E. 363 at 65. In its proposed findings of fact, the City claimed—without any details—that any such cost savings were insignificant, and the district court agreed. *See* D.E. 379 at 28.

"A finding of fact is clearly erroneous if the record lacks substantial evidence to support it, so that our review of the entire evidence leaves us with the definite and firm conviction that a mistake has been committed." *Atlanta Athletic Club v. C.I.R.*, 980 F.2d 1409, 1411-12 (11th Cir. 1993) (internal citations and quotation marks omitted).[4] In this case, there was no evidence in the record to support a finding that the City's cost savings were insignificant. The district court cited to three portions of the trial transcript to support its finding that "the City used the belt presses to supplement—not replace—the centrifuges and incinerators." D.E. 392 at 7. But our reading of those transcript excerpts does not support that finding. Taken together, those excerpts suggest only that the City may have occasionally operated centrifuges and belt presses at the same time. *See*, *e.g.*, D.E. 362 at 141 (centrifuges were offline and being replaced when belt presses were used); D.E. 363 at 64 (belt presses were needed because centrifuges were not meeting expectations). There is, moreover, no indication from the record as to how long those centrifuges were operational or whether the centrifuges were only being

---

[4] Under Georgia law, the City bore the burden to provide evidence on the specific amount of avoided costs to enable the district court to properly calculate damages. *See Hosp. Auth. of Charlton Cnty.*, 277 S.E.2d at 324.

used to process waste for the two still-functioning digesters at RM Clayton rather than also supplementing the belt presses for waste associated with the digesters that had malfunctioned.

On this record, there was not sufficient evidence to support the district court's finding that avoidance costs were insignificant, and Veolia introduced substantial evidence at trial that the City's cost savings were not insignificant. *See*, *e.g.*, D.E. 366 at 20-21 (testimony that the City avoided pumping and natural gas costs because waste was no longer being transferred to the centrifuges); D.E. 363 at 65 (City's lead witness admits that there are cost savings associated with not operating centrifuges and incinerators and the City's requested damages did not offset for those savings). The district court clearly erred in finding the City's avoidance costs to be insignificant.

Nevertheless, we reject Veolia's contention that the City's damages award should be reduced by the full amount of the belt press expenses because the City's failure to include avoidance costs bars any recovery. In fact, Georgia appellate courts—in the two Georgia cases primarily relied upon by Veolia in its post-judgment motion and initial brief on this issue—did not bar recovery entirely. Instead, they remanded to the trial court for additional evidentiary proceedings to determine avoidance costs. *See Hosp. Auth. of Charlton Cnty.*, 277 S.E.2d at 324 (reversing judgment and directing the trial court to grant a new trial); *Richfield*

*Capital Corp. v. Fed. Sign Div. of Fed. Signal Corp.*, 476 S.E.2d 26, 29 (Ga. Ct. App. 1996) (remanding for determination of "actual damages suffered"). We conclude that the sounder course of action is to allow the district court, on remand, to conduct a hearing for the limited purpose of determining the significance of the City's avoidance costs, and then to recalculate the City's damages award accordingly. *See* 28 U.S.C. § 2106 (court of appeals may "remand the cause and . . . require such further proceedings to be had as may be just under the circumstances"). *Cf. Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1231 (11th Cir. 2000) (reversing the district court's calculation of damages and remanding for recalculation); *Nat'l Treasury Emps. Union v. Internal Revenue Serv.*, 735 F.2d 1277, 1279 (11th Cir. 1984) ("This case must be remanded for a determination of the controlling facts."); *Lettsome v. United States*, 411 F.2d 917, 923 (5th Cir. 1969) (remanding so that district court could "[find] separately the amount of damages for loss of earnings and the amount of damages for pain and suffering").

## B. The Digester Lids

The district court concluded that Veolia had allowed the digester tanks to exceed their operating capacity, thereby causing the digester lids to collapse. *See* D.E. 379 at ¶ 53. Although the City spent $6,249,602 to remove and replace the broken digester lids, it did not seek reimbursement of the full replacement costs

because it acknowledged that the lids would have needed to be replaced in the near future. Accordingly, the district court awarded the City a prorated amount of $302,333.40 in damages based upon a calculation that the lids had approximately 2.72 years of remaining service life.

Veolia argues that the district court erred in awarding any damages to the City for the lost value of the digester lids because the lids had already reached the end of their expected service life. But the fact that the digester lids were past their *expected* service life does not mean that they lacked any *actual* value. As noted by the district court, the City presented unrebutted evidence at trial that the "lids were clearly serving a useful function when they collapsed." D.E. 392 at 10. There was no clear error.

Veolia also contends that the district court erred by using a valuation formula from the service agreement to calculate damages. According to Veolia, the formula was developed for another purpose and could not provide an accurate measure of lost value. We conclude, however, that the formula in the service agreement did not leave "the question of damages . . . to speculation, conjecture and guesswork," and enabled the district court to calculate damages with the "reasonable degree of certainty" required under Georgia law. *See Schill v. A.G. Spanos Dev., Inc.*, 457 S.E.2d 204, 205 (Ga. Ct. App. 1995) (internal quotation marks omitted). First, the parties—albeit in a different context—had previously

11

agreed to use this formula to determine the remaining service life of equipment at the facilities. Second, the formula took into account both the age and condition of the digester lids. Third, Veolia provided no evidence to show that the formula's calculation significantly overestimated the remaining value of the digester lids. Thus, the district court's finding on this issue was not clearly erroneous.

## C. Veolia's Prejudgment Interest Claim

In its initial order, the district court denied both parties' claims for prejudgment interest because "[n]either party explained their claims . . . with sufficient clarity to determine these claims with reasonable certainty." D.E. 379 at 64-65. Veolia then filed a Rule 59(e) motion, asserting that it was entitled to prejudgment interest under the service agreement and Georgia law. Veolia also included revised prejudgment interest calculations. The City did not assert a similar claim for prejudgment interest in its own Rule 59(e) motion. But, in its response to Veolia's motion, the City argued that, if Veolia received prejudgment interest, it was entitled to it as well. *See* D.E. 389 at 24. This response was filed after the deadline for Rule 59(e) motions had run.

The district court issued a revised order awarding prejudgment interest to Veolia but also deducting $948,608.82 from that award, which represented the amount in prejudgment interest that the City would have been entitled to. Veolia argues that the $948,608.82 offset in the district court's revised order was error

12

under Rule 6(b)(2) because it effectively extended the time for the City to seek relief under Rule 59(e). We disagree.

First, Rule 6(b)(2) is inapplicable under these circumstances, as it concerns limits on the district court's ability to extend the time to file certain post-judgment motions. Here, the City did not file an untimely post-judgment motion asserting unrelated claims. It filed a timely response addressing the claim raised in Veolia's timely Rule 59(e) motion.

Second, when Veolia filed its motion, it asked the district court to revisit the issue of prejudgment interest and correct a mistake. Significantly, that mistake was not unique to Veolia; it affected the damages award for both parties. It would be inequitable if the district court could only correct that mistake as to Veolia.

Third, Veolia's argument is not compelled by law. In fact, many of our sister circuits have held that, once a Rule 59(e) motion is filed, a district court has the power to make appropriate corrections even with respect to issues not raised in the motion. *See*, *e.g.*, *United States v. Hollis*, 424 F.2d 188, 191 (4th Cir. 1970) ("[A] district judge is not restricted to the modifications suggested by the parties. . . . [He] should not be forced to perpetuate a finding of fact or conclusion of law which he discovers to be erroneous."); *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986) ("A judge may enlarge the issues to be considered in acting on a timely motion under Rule 59."); *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301,

1313 (10th Cir. 2000) ("[I]t is quite clear that . . . a timely filed Rule 59 motion invests the district court with the power to amend the judgment for any reason."), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). And, although our view on the scope of a district court's power to act pursuant to Rule 59(e) is somewhat more narrow, *see Burnam v. Amoco Container Co.*, 738 F.2d 1230, 1232 (11th Cir. 1984), we have explicitly left the circumstance presented in this case unresolved. *See Hidle v. Geneva Cnty Bd. of Educ.*, 792 F.2d 1098, 1100 (11th Cir. 1986) ("[W]e do not attempt to lay down a rule concerning the power of the court to act at all to alter or amend a judgment to the benefit of a non-moving party when the moving party has sought to alter or amend under [Rule 59(e)]."). We hold, therefore, that the district court did not abuse its discretion by reducing Veolia's prejudgment interest award by the amount that the City would have been entitled to. *See Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985) ("The decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion.").

We note, however, that the $948,608.82 calculation was based on the City's damages award of approximately $10,184,343.53. Given our prior ruling on avoidance costs, that damages award may change. On remand, the district court

14

should adjust the offset in proportion to any change in the City's damages calculation once avoidance costs are taken into account. In addition, the offset should be further reduced by the amount of interest that the City has already accrued from its draw on the letter of credit to avoid a double recovery.[5]

### D. The City's Prejudgment Interest Claim

In its revised order, the district court ruled that Veolia's prejudgment interest award included interest on the full amount of the letter of credit. The City argues that Veolia was not entitled to prejudgment interest on the letter of credit because the City had not wrongfully drawn upon it under the terms of the agreement. We agree.

In the event of breach by Veolia, the service agreement allowed the City to draw on the letter of credit for the amount of damages estimated in its good faith assessment. *See* City's Ex. 485 at 139-40. But the agreement also required that, if a court determined that any amount drawn "was not permitted hereunder," then the City had to pay back to Veolia the "amount wrongfully drawn" plus interest. *Id*. at 140. The district court found that the City had "wrongfully drawn" on the entire letter of credit because "it [was] holding [those] funds only as an offset against the

---

[5] The City acknowledges that it has accrued interest from the letter of credit. *See* Reply Brief at 6. But we find nothing in the record to indicate the amount of accrued interest. That figure will need to be calculated on remand.

15

damages that it anticipated proving at trial." D.E. 379 at 60-61. As we explain, that finding was error.

The City could not have wrongfully drawn on the entire letter of credit intended to secure Veolia's payment for anticipated damages given that the City successfully proved breach and damages that exceeded the letter of credit at trial. Naturally, any damages award to the City should have been offset by the amount of money that the City had already drawn from the letter of credit, but nothing in the agreement required the City to return the letter of credit to Veolia under these circumstances. We interpret the term "amount wrongfully drawn" to mean any amount that exceeded the damages proven at trial by the City for Veolia's breach.[6] And, accordingly, Veolia would only be entitled to prejudgment interest on that amount.

As with most issues of financial accounting, a simplified example helps clarify our holding. Imagine that the City drew $5 million from the letter of credit and, at trial, it was only awarded $4 million in damages for Veolia's breach. Under

---

[6] Veolia argues that this interpretation of the service agreement is not before us on appeal because the City first argued for this reading in its motion to alter or amend, and it did not include the district court's order rejecting that argument in its notice of appeal. We disagree. The City appealed the district court's initial order, D.E. 379, and revised order, D.E. 392. In both of those orders the district court found that the City had "wrongfully drawn" on the letter of credit. Thus, in order to address the issues properly before us on appeal, we must define the phrase "wrongfully drawn" under the service agreement. Moreover, the district court's order denying the City's motion to alter or amend the revised opinion is so "inextricably intertwined" with the orders listed in the notice of appeal that our consideration of the issues clearly raised in the City's motion is consistent with our "policy of liberal construction of notices of appeal." *See Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1313 (11th Cir. 2004) (quoting *C.A. May Marine Supply Co. v. Brunswich Corp.*, 649 F.2d 1049, 1056 (5th Cir. 1981)).

16

the terms of the agreement, the City would be required to pay back $1 million to Veolia as the "amount wrongfully drawn" (plus prejudgment interest on that $1 million).

We also note that, based on the City's current damages award ($10,184,343.53), Veolia would not be entitled to any prejudgment interest on the letter of credit claim. But the City's damages award may change in light of our ruling on avoidance costs. If the City's recalculated damages award is below $9,525,304, the district court should award Veolia prejudgment interest, but only on the difference between the City's damages award and the letter of credit.

## E. The City's Attorney's Fees

Finally, we conclude that the City's claim for attorney's fees under the service agreement's indemnification provision is without merit. In the pre-trial order, the City only pursued two theories for recovery of attorney's fees: recovery pursuant to GA. CODE ANN. § 13-6-1; and recovery from Veolia's parent company through a separate guarantee agreement. *See* D.E. 281 at 9. The City did not clearly state that it was attempting to seek attorney's fees under the service agreement's indemnification provision. The district court, therefore, correctly ruled that the City had abandoned this claim. *See Iervolino v. Delta Air Lines, Inc.*, 796 F.2d 1408, 1419 (11th Cir. 1986) (any legal theories not included in the pretrial order may be waived).

## III. Conclusion

We commend the district court for its handling of the case and its comprehensive order, and affirm on most issues. To reiterate, we affirm the denial of Veolia's attempt to cap the City's damages at $2 million, the damages calculation for the digester lids, the offset on Veolia's prejudgment interest award, and the denial of the City's request for attorney's fees. We reverse the calculation of the City's damages award for failing to account for avoidance costs, and the award of prejudgment interest to Veolia on the full amount of the letter of credit. And we remand for the district court to (1) conduct a hearing on the amount of costs avoided by the City when it used belt presses; (2) recalculate the City's damages award accordingly; (3) recalculate the award to Veolia so that it only receives prejudgment interest on the amount that the letter of credit exceeds the City's gross damages award; and (4) recalculate any other damages calculations affected by these changes (such as the City's prejudgment interest offset).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**