[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15049
_____

D.C. Docket No. 1:06-cv-01457-TWT

VEOLIA WATER NORTH AMERICA
OPERATING SERVICES, LLC,
f.k.a. U.S. Filter Operating Services, Inc.,

Plaintiff - Counter Defendant -
Cross Defendant - Appellant,

VEOLIA ENVIRONNEMENT, S.A.,
f.k.a. Vivendi Environnement, S.A.,

Consol. Defendant - Counter
Claimant - Cross Defendant -
Appellant,

versus

CITY OF ATLANTA,

Defendant - Counter Claimant -
Cross Claimant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 23, 2018)

Before TJOFLAT, MARTIN, and ANDERSON, Circuit Judges.

MARTIN, Circuit Judge:

This is the second appeal after a bench trial arising out of the breach of a contract for operation of sewage treatment plants in Atlanta. In 2013 this Court affirmed the judgment originally entered by the District Court in part, but remanded for a hearing to determine damages with more precision. See Veolia Water N. Am. Operating Servs., LLC v. City of Atlanta, 546 F. App'x 820 (11th Cir. 2013) (per curiam) (unpublished). The District Court conducted that hearing, and plaintiffs Veolia Water North America Operating Services, LLC and Veolia Environnement, S.A. (collectively "Veolia") now appeal the latest calculation of damages.

Veolia contends the District Court did not properly carry out this Court's instructions on remand, so the calculation of damages remains flawed. After careful review, we conclude there was sufficient evidence to support the District Court's damages findings, but there was error in the District Court's calculation of prejudgment interest. We therefore affirm in part and remand in part for proceedings consistent with this opinion.

## I. BACKGROUND

A.    FACTUAL BACKGROUND

The facts of this case were summarized in this Court's earlier opinion:

2

In April of 2001, the City of Atlanta released a request for proposal for an alternative method of waste disposal at its wastewater treatment facilities.  The City eventually awarded Veolia the contract, and the two parties executed a service agreement in August of 2002.  The agreement . . . required Veolia to provide a letter of credit that the City could draw upon if Veolia defaulted on the agreement.

In December of 2002, Veolia took over the facilities' dry side operations under the terms of the agreement. Over time, the four digester tanks at the RM Clayton facility—which had not been cleaned in years—began to fall into disrepair. . . .  By April 8, 2005, the lid for one of the digester tanks collapsed under the weight of [] excess waste.  Another digester lid suffered the same fate on December 31, 2005.  After the digester lids collapsed, the City had to lease out belt presses from Synagro Technologies, Inc.  The belt presses provided a substitute method for processing waste until the digester lids could be replaced.  The City used the belt presses at RM Clayton for approximately two years.

On July 10, 2006, the City served Veolia with a notice of termination for purported breaches of the service agreement. The City also drew upon Veolia's letter of credit in full for $9,525,304.  Veolia, in turn, sued the City to recover on unpaid invoices and various operating expense increases.  The City answered and asserted its own breach of contract claims against Veolia.

Id. at 822–23 (footnotes omitted).

B.    DISTRICT COURT BENCH TRIAL

After a bench trial, the District Court found the City breached its service agreement with Veolia because it failed to fund essential maintenance and did not pay Veolia for some of the work it had performed.  The District Court awarded Veolia $15,192,788.52 in damages.  The District Court also found Veolia at fault for damage to certain equipment and awarded the City damages that covered the

3

costs of repairing the equipment and renting the belt presses at the RM Clayton facility. In total the City was awarded $10,184,343.53 in damages. Because both parties were awarded damages, the District Court offset the awarded amounts and found that "Veolia is entitled to a net recovery of $5 million," while "the City is not entitled to recover anything."

Both parties asked the District Court to amend the judgment. Veolia argued it was entitled to recover prejudgment interest on the damages awarded by the court and submitted proposed prejudgment interest calculations. The City did not raise the issue of prejudgment interest in its own motion, but argued in response to Veolia's motion that it too was entitled to prejudgment interest. The District Court granted Veolia's motion and awarded it $6,013,077.51 in prejudgment interest, raising Veolia's total damages award to $21,134,943.93. However, the District Court "deduct[ed] from the net amount the sum of $948,608.82 that the City claims that it would have received in prejudgment interest." Therefore the District Court found Veolia was entitled to a net recovery of $10,001,991.58. The amended judgment entered by the Clerk reflects that amount.

C.    FIRST APPEAL

On appeal, this Court vacated the damages awarded to the City because the District Court failed to properly consider "expenses that were avoided but otherwise would have been incurred in the absence of breach." Veolia Water, 546

4

F. App'x at 824–25 (citing Hosp. Auth. of Charlton Cty. v. Bryant, 277 S.E.2d 322, 324 (Ga. 1981)).  Specifically, the ruling on appeal was "there was not sufficient evidence to support the district court's finding that the avoidance costs were insignificant."  Id. at 825.  The first appeal panel also noted testimony indicating that the City avoided costs by "not having to operate the centrifuges and incinerators while the belt presses were in use."  Id.  Rather than dismiss the City's recovery entirely, the case was remanded to the District Court "to conduct a hearing for the limited purpose of determining the significance of the City's avoidance costs, and then to recalculate the City's damages award accordingly."  Id. at 826.

The instruction included that "[o]n remand, the district court should adjust the [prejudgment interest] offset in proportion to any change in the City's damages calculation once avoidance costs are taken into account."  Id. at 827–28.  This instruction specified that the prejudgment interest amount "should be further reduced by the amount of interest that the City has already accrued from its draw on the letter of credit to avoid a double recovery."  Id. at 828.  Finally, most of the prejudgment interest awarded to Veolia was affirmed on that appeal, except that portion of the award based on prejudgment interest for the letter of credit on which the City drew.  Id. at 828–29.

D.    REMAND PROCEEDINGS

On remand the parties engaged in discovery and presented new evidence to the District Court.  During the remand hearing, the District Court asked the parties to clarify the Eleventh Circuit's instructions:

> Just so I'm not making a big mistake here, I think what the Court of Appeals referred to as avoided costs is not to be determined based upon the assumption that the digester lids were still functional.  I think what the Court of Appeals was referring to as avoided costs is avoided costs after the lids collapsed, not on some hypothetical situation but on the actual situation.  Am I wrong about that?

The City agreed with the District Court but Veolia did not.  The District Court included this exchange in the post-hearing order, reaffirming its position that hypothetical costs are irrelevant.

The City relied primarily on the testimony of Rob Bush, a licensed engineer who administered the Veolia contract for the City.  Based on Mr. Bush's testimony, the District Court found "the City consistently operated the centrifuges and incinerators at essentially the same level, both before and after the digester lids were replaced and the belt presses were no longer used as a supplemental dewatering process."  The District Court explicitly "[found] as a matter of fact that the belt presses were used as a supplement to and not a replacement for (or instead of) operating the centrifuges at RM Clayton."

The City submitted accounting data, but its accounting procedures identified only general expenses from operating RM Clayton, meaning the data did not

6

distinguish between the "wet" and "dry" sides of the plant.  Nonetheless, Mr. Bush performed an analysis of the costs borne by the City during four distinct periods of time: (1) Period 1 covered January 2002 to November 2002, which was before the contract with Veolia went into effect; (2) Period 2 covered December 2002 to July 2006, which was "the entire period that Veolia was operating the solids side of the plant"; (3) Period 3 covered August 2006 to August 2008, which was the period when the City operated the belt presses; and (4) Period 4 covered September 2008 to June 2009, which was after the digester lids were repaired.

The District Court accepted the evidence presented by the City that compared the overall cost of operating the plant while the lids were broken with the overall operational costs after the lids were fixed.  Said another way, the District Court compared the average monthly costs during "Period 3" with the average monthly costs during "Period 4," as described by Mr. Bush.  Using this method, the District Court found it cost the City approximately $3,344 less per month to operate the RM Clayton facilities during Period 3.  For the 25-month period in question, this meant the total amount of avoided costs was $83,600.

The District Court recalculated the City's damages amount by subtracting $83,600 from its initial award.  It then calculated prejudgment interest on that amount through to 2016, the date of the new order.  The District Court then recalculated Veolia's overall award by removing the portion of prejudgment

interest struck down on appeal, but otherwise made no other adjustments.  Once again, the District Court offset Veolia's overall award by the City's overall award and awarded a net amount of $5,688,191.10 to Veolia.  This amount is reflected in the amended judgment.  It is this amended judgment we now consider in this second appeal arising out of the dispute between these parties.

## II.  STANDARD OF REVIEW

"On appeal of a district court order from a bench trial, we review the court's conclusions of law de novo and its findings of fact for clear error."  HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 873 (11th Cir. 2005).  "A federal court sitting in diversity is required to apply state substantive law and federal procedural law."  Burke v. Smith, 252 F.3d 1260, 1265 (11th Cir. 2001).

## III.  DISCUSSION

A.    AVOIDED COSTS

Veolia argues the District Court failed to perform the avoided costs calculation as instructed.  Veolia also contends the evidence offered by the City could not support an award of damages even if the correct standard is applied.

Under Georgia law, damages for breach of contract are calculated by putting the injured person "in the position he would have been in had the contract been performed."  Bennett v. Associated. Food Stores, Inc., 165 S.E.2d 581, 585 (Ga. Ct. App. 1968).  To accurately capture what would have occurred absent a breach,

8

the court must take into account "the amount of [plaintiff's] expenses which would have been incurred." Bryant, 277 S.E.2d at 324; see also Kitchens v. Lowe, 228 S.E.2d 923, 927 (Ga. Ct. App. 1976) ("[T]he gross amount [of expected profits] minus expenses equals the amount of recovery."). It is plaintiff's burden to prove the amount of avoided costs. Bryant, 277 S.E.2d at 324.

On remand, the District Court indicated it would not consider arguments "on some hypothetical situation" but would instead focus "on the actual situation." This misstates Georgia law because the process of putting the injured person "in the position he would have been in had the contract been performed" necessarily requires a court to hypothesize. See Bennett, 165 S.E.2d at 585; Bryant, 277 S.E.2d at 324 (a plaintiff must "show the amount of [plaintiff's] expenses which would have been incurred" absent a breach (emphasis added)).

Despite misstating Georgia law, however, the District Court was legally correct in its calculation of avoided costs. The District Court received evidence demonstrating that the costs of running the dry side of the RM Clayton plant remained consistent before the digester lids broke and after they were repaired. These operational costs approximate the costs the City would have faced even if the digester lids had not broken. The District Court then compared that amount to the actual costs the City faced in operating the plant while the digester lids were broken. It found the difference between these two figures to represent the costs the

9

City avoided because of the breach.  Based on this analysis the District Court arrived at the "approximately $3,344 per month" amount as that avoided by the City as a result of the breach.[1]

This Court can affirm a legal decision even on occasions when a lower court engages faulty reasoning to reach that decision.  See Bess v. Check Express, 294 F.3d 1298, 1304 n.2 (11th Cir. 2002) ("[W]e must affirm the district court if its result is correct, even if its reasoning is in error."); Turner v. Am. Fed'n of Teachers Local 1565, 138 F.3d 878, 879–80 & n.1 (11th Cir. 1998).  Although the District Court described its methodology in a way that caused concern, the method it actually employed was in keeping with the instructions given for remand.

Neither are we persuaded by Veolia's arguments that the City's evidence was insufficient as a matter of law to support the District Court's findings.  A plaintiff must offer evidence that establishes damages to "a reasonable degree of certainty."  Bryant, 277 S.E.2d at 324.  Calculating the amount of damages "cannot be left to speculation, conjecture and guesswork," Dev. Corp. of Ga. v. Berndt, 205 S.E.2d 868, 870 (Ga. Ct. App. 1974), though "damages need not be calculated with

---

[1] This conclusion is supported by Georgia law, which allows a plaintiff to satisfy the evidentiary burden on avoided costs by offering evidence that costs would have remained unchanged, despite any breach.  See Bennett v. Smith, 267 S.E.2d 19, 20 (Ga. 1980) ("Under these circumstances, the jury would have been authorized in awarding the plaintiffs lost revenues as damages without deducting production expenses therefrom, since the plaintiffs' evidence showed that they incurred the same expenses they would have incurred had the [breach not occurred].").

10

exact mathematical certainty." EZ Green Assocs., LLC v. Ga.-Pac. Corp., 770

S.E.2d 273, 277 (Ga. Ct. App. 2015) (discussing burden for demonstrating

expected profits).  Under the clear error standard we will overturn the District

Court's factual findings only when we are "left with the definite and firm

conviction that a mistake has been committed." HGI, 427 F.3d at 873 (quotation

omitted).

Veolia points to various flaws in the City's evidence, but none warrant

reversal.  For instance, Veolia complains that the City offered only plant-wide

accounting data, rather than data specific to the dry side of the plant. However the

City gave reasonable explanations for why the wet-side and dry-side costs could

not be disentangled.[2]  And so long as there was evidence that wet-side costs

remained relatively static, variations in plant-wide data could reasonably be used to

estimate changes in dry-side costs.  Veolia's briefing acknowledges evidence

showed "that any increase in wet side costs after the two digester lid collapses was

non-existent or minimal."  Similarly, arguments raised by Veolia regarding

fluctuations in utility prices and the monthly volatility of overall costs were

reasonably addressed by the District Court's use of monthly averages.  By

averaging costs over a number of months, the District Court could "normalize the

costs so that they could be compared across the various [time] periods."

---

[2] The City explained that electricity and gas were metered at one point entering the plant, meaning those operating costs could not be separated into wet-side and dry-side components.

Finally, Veolia argues that the City's chosen comparator evidence was weak because the City made capital improvements to the RM Clayton plant after the digester lids broke, and any resulting increase in efficiency after repair of the lids would distort the cost-comparison. The City countered that its repairs did not increase efficiency but instead restored the plant to design capacity. When it used the comparator evidence offered by the City, the District Court accepted the testimony proffered by the City.

Veolia's arguments do raise some concerns as to the precision of the calculations performed by the District Court. But appeals courts cannot require perfection in the fact finding process. The City was only required to submit "data sufficient to enable [the fact finder] to estimate with reasonable certainty the amount of damages." Bryant, 277 S.E.2d at 324 (quotation omitted). And it did. Taking the evidence into account, the District Court did not engage in "speculation, conjecture and guesswork," Berndt, 205 S.E.2d at 870, such that we are not "left with the definite and firm conviction that a mistake has been committed," HGI, 427 F.3d at 873 (quotation omitted). We have therefore concluded the District Court's finding on the amount of avoided costs was not clearly erroneous.

B.    PREJUDGMENT INTEREST

1.  Veolia's Prejudgment Interest

12

Back in August 2011 the District Court awarded Veolia prejudgment interest on all of its claims, including on the full value of the letter of credit. The ruling in the first appeal vacated the portion of prejudgment interest that was based on the letter of credit. Veolia Water, 546 F. App'x at 828–29. In 2016, after the remand hearing, the District Court recalculated Veolia's overall damages award by removing that specific portion of prejudgment interest, but otherwise left intact the previous award to Veolia. Veolia argues that the District Court should have updated the remaining prejudgment interest calculation to account for the five years that had elapsed between the two judgments.

Under Federal Rule of Appellate Procedure 37, if the Court affirms a judgment, then postjudgment interest is measured from the date the District Court's initial judgment was entered. Fed. R. App. P. 37(a). However, if the Court "modifies or reverses a judgment," then the date for calculating interest changes. Fed. R. App. 37(b). Ordinarily the mandate must "contain instructions about the allowance of interest." Id. But if the mandate is silent, the "default rule" is that "postjudgment interest accrues from the date of the amended judgment." SEB S.A. v. Sunbeam Corp., 476 F.3d 1317, 1319 (11th Cir. 2007).

While postjudgment interest runs from the date of the amended judgment, prejudgment interest is determined by state law. Id. at 1320. In Georgia, the prejudgment interest period generally covers any delays in legal proceedings that

13

prevent the final entry of judgment.  See Bennett v. Mullally, 587 S.E.2d 385, 389 (Ga. Ct. App. 2003) (affirming award of prejudgment interest that accrued during "the two years between the first defense verdict and the trial court's ruling on [plaintiff's] motion for a new trial").  This is because "[t]he purpose of prejudgment interest is to compensate the injured party for the delay in receiving money damages."  Peters v. Hyatt Legal Servs., 469 S.E.2d 481, 485 (Ga. Ct. App. 1996).

When this Court vacated the first amended judgment, there was no sum of damages owing to either party.  By the time the District Court issued its second amended judgment, another five years had passed from the original bench trial.  Yet Veolia was not awarded any compensation for those additional five years of delay in receiving money damages.[3]  In this way, the District Court erred.

The City argues Veolia is not entitled to any additional prejudgment interest because Veolia's underlying claims were not affected by the appellate order.  It contends that Rule 37 and this Court's precedent are claim-specific.  See Sunbeam, 476 F.3d at 1320 (holding that Rule 37 applies when an appellate order modifies "the actual amount of a judgment on a claim" (emphasis added and quotation omitted)).  This argument misreads Sunbeam, which held that a modification of the

---

[3] Under Sunbeam, Veolia's postjudgment interest began to accrue in 2016, the date of the amended judgment.  See Sunbeam, 476 F.3d at 1320.  It would be inconsistent with Georgia law to allow a five-year gap between when prejudgment interest stopped accruing and when postjudgment interest began.  See Mullally, 587 S.E.2d at 389.

14

prejudgment interest award is itself an amendment of the judgment. Id. (noting that "the amount of prejudgment interest . . . forms part of the actual amount of a judgment on a claim").  In the earlier ruling in this case this Court specifically modified both parties' prejudgment interest awards.  Also, Rule 37 concerns modifications to "judgments," not just claims.  Fed. R. App. P. 37(b).

Veolia raised this issue before the District Court and provided updated interest figures running through 2016, but the District Court made no mention of this issue in its order.  This error is further highlighted by the District Court's decision to run the City's prejudgment interest through to 2016, but not doing so for Veolia.  There is no basis for this disparate treatment.

For these reasons the decision on Veolia's prejudgment interest award was clearly erroneous, and the District Court should recalculate the appropriate amount of prejudgment interest on remand.

### 2.  The City's Prejudgment Interest

Veolia argues that because the letter of credit was available to the City in 2006, there is no need for it to draw prejudgment interest on damages that were covered by that money.

Again, under Georgia law, prejudgment interest is intended to "compensate the injured party for the delay in receiving money damages." Peters, 469 S.E.2d at 485.  The City was able to immediately rely on the

letter of credit to fund most of the costs of fixing the broken digester lids and renting the belt presses. This being the case, it would not be appropriate to award the City prejudgment interest on damages covered by the letter of credit.

The City tells us this issue was settled in the first appeal, and that law of the case precludes Veolia from challenging that award of prejudgment interest now. "Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case." United States v. Robinson, 690 F.2d 869, 872 (11th Cir. 1982). The doctrine applies to "issues decided by necessary implication as well as those decided explicitly." Luckey v. Miller, 929 F.2d 618, 621 (11th Cir. 1991).

We reject the City's argument because this Court never ruled on the propriety of awarding the City prejudgment interest on damages covered by the letter of credit. In this Court's previous decision, the panel analyzed whether the District Court had the authority to award prejudgment interest to a party that did not seek it in a motion under Federal Rule of Procedure 59(e). Veolia Water, 546 F. App'x at 826–27. The only discussion about the amount of prejudgment interest was related to the instruction that the District Court should recalculate the amount in light of the new damages finding and should take into account "the amount of

16

interest that the City has already accrued from its draw on the letter of credit to avoid a double recovery." Id. at 828.

The District Court order now before us fails to fully take into account the benefit the City already received from being able to access the letter of credit funds at the time of the breach. The City should not be doubly compensated for this amount, and the District Court must address this issue on remand.

## IV.  CONCLUSION

The District Court's method for calculating the City's avoided costs was legally correct, and there was sufficiently reliable evidence to support its damages finding as to avoided costs. However, the District Court erred in calculating the amount of prejudgment interest it awarded to each party.

On remand, the District Court should recalculate the amount of prejudgment interest awarded to both parties. While the principal amount of damages will remain unchanged, both parties are entitled to have their prejudgment interest awards updated. Because this recalculation requires us to vacate the current judgment, the District Court should calculate prejudgment interest through the date the new judgment is entered. See Sunbeam, 476 F.3d at 1320; Mullally, 587 S.E.2d at 389. Also, the City should not be awarded any prejudgment interest on damages that were covered by the letter of credit, but instead should receive

17

prejudgment interest only for the portion of its damages in excess of the letter of credit.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**